UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **Bilye Martinez,** | ) | CA 08 283 ML |
| **Plaintiff,** | ) | |
| **vs.** | ) | **CASE No:** **MDL Docket No. 07-1842-ML** |
| **Davol, INC., and C.R. Bard, INC.,** | ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | |

# COMPLAINT

## Parties

1. Plaintiff Bilye Martinez, born 1/28/53, is and was at all times relevant to this Complaint, a citizen and resident of Cedar City, Utah.

2. Defendant Davol Inc. ("**Davol**") is incorporated and has its principal place of business in Rhode Island. It manufactures the Composix® Kugel mesh ("**mesh**") at Davol, Inc., Sub. C.R. Bard, Inc., 100 Sockanossett Crossroad, Cranston RI 02920. Davol has a registered agent in Rhode Island at CT Corporation System, 10 Weybosset St., Providence, Rhode Island. Davol focuses its business on products in key surgical specialties including hernia repair, hemostasis, orthopedics, and laparoscopy.

3. Defendant C. R. Bard Inc. ("**Bard**") is incorporated in New Jersey. It is the corporate parent/stockholder of Davol and participates in the manufacture and distribution of the mesh. It also manufactures and supplies Davol with material that forms part of the mesh. Bard at all relevant times did substantial and continuous business in the State of Rhode Island.

## Jurisdiction

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and because this is an action by an individual Plaintiff who is a citizen of a different state from all Defendants.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391. Defendants are located in this District, manufactured and advertised the mesh in this District, received substantial compensation and profits from sales of Composix Kugel meshes in this District, and made material omissions and misrepresentations and breached warranties in this District.

## Facts

6. Defendant Davol designed, manufactured and distributed the mesh that was inserted into Plaintiff's body.

7. Defendant Bard, through its agents, servants and employees, participated in the manufacture and delivery of the mesh that was implanted into Plaintiff's body.

8. On March 23, 2007 Plaintiff was implanted with a Composix Kugel mesh, Medium Oval 4.3"x5.5", ref. no. 0010205, lot no. 43AQD398, by Dr. Mark T. Hansen at Valley View Medical Center in Cedar City, Utah to repair a ventral incisional hernia.

9. After its 3-23-07 implantation, the mesh concretized, meaning it hardened due to oxidation or other chemical reaction with surrounding bodily fluids and tissue. This caused plaintiff extreme pain and enabled adhesions on the interior surface of the mesh.

10. Plaintiff's defective mesh required explantation and replacement with a more supple

Proceed mesh on May 21, 2007 at Valley View Medical Center in Cedar City, Utah.

11. Plaintiff's mesh was not included in the FDA's and Defendants' recalls.

12. The mesh implanted in Plaintiff was designed, manufactured, sold and distributed by Davol to be used by surgeons for hernia repair surgeries and was further represented by Davol to be an appropriate, cost-effective and suitable product for such purpose.

13. The Defendants submitted their 510k device approval application to the Federal Drug Administration ( "**FDA**") on January 22, 2001. Following this application, the Composix Kugel mesh was authorized by the FDA as a Class II medical device.

14. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the devices.

15. On December 22, 2005, Davol recalled many product size lines of the Composix Kugel mesh under a Class I recall notice.

16. The mesh was recalled due to faulty welds in its clear plastic "memory recoil ring" that can break or fail when bent during implantation or later patient activity. Victims' repair doctors have reported migration of broken ring sections, intestinal fistulae, bowel perforation and even death.

17. On March 24, 2006, the initial Class I recall on the mesh was expanded to include more product size lines and additional production lots of the patch.

18. On January 10, 2007, the FDA recall was again expanded to encompass further production lots of the defective hernia mesh product.

19. Plaintiff has suffered and will continue to suffer physical pain and mental anguish from the defective mesh.

20. Plaintiff has incurred substantial medical bills and lost wages due to the mesh injury.

21. Davol and Bard withdrew a large number of meshes from the market as a result of the high complication and failure rate of the product.

22. Upon information and belief, Davol and Bard failed to comply with the FDA application and reporting requirements for gaining approval of the mesh.

23. Upon information and belief, Davol and Bard were aware of the high degree of complication and failure rate associated with the mesh before it was recalled.

24. Upon information and belief, Davol and Bard were aware of the defects in manufacture and design, including the unreasonably dangerous tendencies to delaminate, oxidize, and concretize, prior to the recall of their mesh.

25. Upon information and belief, the complications and failures associated with the meshes are not limited to the sizes which Davol and Bard has already recalled.

26. Upon information and belief, Davol and Bard were aware of the defect in manufacture and design of the non-recalled Composix Kugel sizes and chose not to issue a recall on all Composix Kugel meshes despite the high degree of complication and failure rates.

**COUNT I**
**Negligence**

27. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

28. Davol and Bard at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the mesh.

29. Davol and Bard at all times mentioned knew or should have known that the mesh was not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure users.

30. Davol and Bard so negligently and carelessly designed, manufactured, tested, inspected, packaged, labeled, distributed, recommended, displayed, sold, examined, and supplied the mesh, that it was dangerous and unsafe for its intended purpose.

31. Davol and Bard were aware of the probable consequences of the mesh defect. Davol and Bard knew or should have known the mesh would cause serious injury; they failed to disclose the known or knowable risks associated with the mesh. Davol and Bard willfully and deliberately failed to avoid those consequences, and in doing so, Davol and Bard acted in conscious disregard of the safety of Plaintiff.

32. Defendants Davol and Bard had a duty to adequately warn Plaintiff's treating physicians of the risks of breakage, separation, tearing and splitting associated with the mesh and the resulting harm and risk it would cause patients.

33. Defendants Davol and Bard breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the mesh.

34. As a direct and proximate result of the duties breached, the mesh used in Plaintiff's hernia repair surgery failed, resulting in Plaintiff suffering pain and harm.

35. As a direct and proximate result of Davol's and Bard's negligence, Plaintiff has suffered injuries and damages.

36. Defendants Davol and Bard were negligent in the manner described above.

37. Davol's and Bard's conduct in continuing to market, sell and distribute the mesh after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in a sum which will serve to deter Davol, Bard and others from similar conduct in the future.

**Wherefore**, Plaintiff requests judgment against Davol and Bard for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other relief that this Court may deem just and appropriate.

## COUNT II
## Violation of Rhode Island Deceptive Trade Practices Act

38. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

39. Defendants Davol and Bard engaged in unfair and deceptive trading practices with the Plaintiff in the following respects:

40. Defendants Davol and Bard are merchants, who study, test, design, develop, manufacture, inspect, produce, market, promote, advertise, distribute and/or sell the mesh for hernia repair surgery.

41. Defendants Davol and Bard knowingly committed unfair and deceptive practices in their study, test, design, development, manufacture, inspection, production marketing, promotion, advertising, distribution and/or sale of the mesh for hernia repair surgery.

42. Defendants Davol and Bard knowingly committed unfair and deceptive practices when they failed to safely design and construct an effective mesh for hernia repair surgery.

43. While Defendants Davol and Bard knew or reasonably should have known that some meshes were at risk while they were engaged in the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and or selling of the mesh for hernia repair surgery, specifically that the "memory recoil ring" upon being subjected to stress after placement in the intra-abdominal space posed a significant risk of breakage, separation, migration, tearing and splitting that posed the danger of severe harm and death to patients.

44. Davol and Bard did not inform the FDA prior to December 2005 of its knowledge concerning the dangers posed to patients of its meshes which were susceptible to failure and subject to the Class I recall.

45. Davol and Bard did not inform the public at large prior to December 2005 of its knowledge concerning the dangers posed to patients of its meshes which were susceptible to failure and subject to the Class I recall.

46. Davol and Bard failed to give adequate warnings regarding the use and potential problems with such patches used for hernia repair.

47. Davol's and Bard's actions occurred while they were engaged in trade and commerce, and all of the conduct occurred during the course of their business.

48. Davol's and Bard's conduct in continuing to market, sell and distribute the mesh after obtaining knowledge that they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Davol,

Bard and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against Davol and Bard for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT III
## Strict Product Liability

49. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

50. Defendants Davol and Bard are strictly liable to Plaintiff in the following respects:

51. Davol and Bard designed, manufactured, assembled, distributed, conveyed and/or sold the mesh for hernia repair surgery.

52. The meshes were defective because they failed to perform safe and effectively for the purpose they were originally designed. Plaintiff's mesh was a Class I recalled device that failed while inside the body, causing serious physical complications which required subsequent, painful and unnecessary removal surgery of the mesh.

53. At all times mentioned, the mesh was substantially in the same condition as when it left the possession of Davol.

54. The mesh implanted into Plaintiff was being used in a manner reasonably anticipated at the time it was sold by Defendants

55. The meshes, like the one found in Plaintiff, at the time they left the possession of Davol and Bard had a defective manufacture and/or defective design unreasonably dangerous for their intended use and presented an unreasonable risk of danger and injury to Plaintiff as follows:

i. The mesh was sold in a defective condition by design and manufacture;

ii. The mesh as designed and manufactured was unsafe to Plaintiff;

iii. The mesh as designed and manufactured was unreasonably dangerous to Plaintiff;

iv. The mesh did not perform safely as an ordinary consumer/patient, like Plaintiff, would expect;

v. The mesh as designed and manufactured was unsafe for its intended use;

vi. Davol and Bard failed to warn the end user about the dangers and risks of the product;

vii. Davol and Bard knew the component parts of the mesh as implemented through design and/or manufacture could cause injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the mesh to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the mesh and/or its components from the initial site of the hernia repair surgery.

x. Any other acts or failures to act by Davol or Bard regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of meshes for hernia repair surgery as will be learned during discovery.

56. Davol's and Bard's conduct in continuing to market, sell and distribute the mesh after

obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Davol, Bard and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against Davol and Bard for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT IV
## Negligent Infliction of Emotional Distress

57. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

58. Defendants Davol and Bard are liable to Plaintiff for the negligent infliction of emotional distress in the following respect:

59. Plaintiff suffered severe emotional distress, which was as a result of Defendant's negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the mesh for hernia repair surgery.

60. Plaintiff suffered severe emotional distress, which was as a result of Davol's and Bard's negligent conduct in failing to adequately and safely design and construct an effective and safe mesh for hernia repair surgery.

61. Therefore, Davol and Bard are liable to Plaintiff.

62. Davol's and Bard's conduct in continuing to market, sell and distribute the mesh after obtaining knowledge they were failing and not performing as represented and intended, showed

complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Davol, Bard and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against Davol and Bard for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT V
## Intentional Infliction of Emotional Distress

63. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

64. Defendants Davol and Bard are liable to Plaintiff for the intentional infliction of emotional distress in the following respect:

65. Plaintiff suffered severe emotional distress, which was as a result of Davol's and Bard's extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the mesh for hernia repair surgery.

66. Plaintiff suffered severe emotional distress, which was as a result of Davol's and Bard's extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe mesh for hernia repair surgery, in complete and reckless disregard of safety to Plaintiff.

67. Therefore, Davol and Bard are liable to Plaintiff.

68. Davol's and Bard's conduct in continuing to market, sell and distribute the mesh after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Davol, Bard and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against Davol and Bard for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT VI
## Breach of Implied Warranty

69. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

70. Defendants Davol and Bard are liable to Plaintiff for their breach of implied warranty in the following respect:

71. Davol and Bard sold the mesh which was implanted in Plaintiff. Davol and Bard impliedly warranted to Plaintiff, attending physicians, and the health care providers involved in purchasing and distributing Plaintiff's mesh, that it was of merchantable quality and safe for the use for which they were intended.

72. Davol and Bard knew or should have known that the mesh at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

73. Plaintiff, attending physicians and the health care providers involved in purchasing

and distributing Plaintiff's mesh, all reasonably relied on Davol's and Bard's judgment, indications and statements that the mesh was fit for such use.

74. When the meshes was distributed into the stream of commerce and sold by Davol and Bard, they were unsafe for their intended use, and not of merchantable quality, as warranted by Davol and Bard in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

75. Plaintiff suffered such injuries and damages as a result of Davol and Bard's conduct and actions.

**Wherefore**, Plaintiff requests a judgment against Davol and Bard for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate

## COUNT VII
## Failure to Warn

76. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

77. In the course of business, Davol and Bard designed, manufactured and sold the mesh for hernia repair surgeries.

78. At the time of the design, manufacture and sale of the mesh, and more specifically at the time Plaintiff received the mesh, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the meshes were not accompanied by proper warnings regarding significant adverse consequences associated with the mesh.

79. Bard and Davol failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the products. Bard and Davol failed to warn of the known or knowable injuries associated with malfunction of the mesh, including but not limited to rupture of the Patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

80. The dangerous and defective conditions in the meshes existed at the time they were delivered by the manufacturer to the distributor. At the time of Plaintiff's implantation surgery the mesh was in the same condition as when manufactured, distributed and sold.

81. Plaintiff did not know at the time of use of the mesh, nor at any time prior thereto, of the existence of the defects in the Patches.

82. Plaintiff suffered the aforementioned injuries and damages as a direct result of Davol and Bard's failure to warn.

83. The conduct of Bard and Davol in continuing to market, promote, sell and distribute the mesh after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter Bard, Davol and others from similar conduct.

**Wherefore**, Plaintiff respectfully requests judgment against Davol and Bard for such amount as the Court shall determine to be fair and reasonable, and such other relief as may be fair and reasonable under the circumstances and for court costs and litigation expenses.

## COUNT VIII
**Constructive Fraud**

84. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

85. Defendants, while in possession of unique and pertinent information involving the safety and mechanical reliability of its Kugel Composix Hernia Patches, presented its Kugel Composix Hernia Patches as mechanically sound and failed to warn of its inherent design and/or manufacturing defects. Defendants suppressed this information and continued sales and marketing of its product to the general public. Defendants knew or should have known Plaintiff had no means, other than Defendant's full, accurate, and objective disclosure, of obtaining the relevant information.

86. Through their unique knowledge and expertise regarding the affected nature of the Kugel Composix Hernia Patches, and through their statements to physicians and their patients in advertisement, promotional materials, and other communications, Defendants professed and affirmed to the Plaintiff their knowledge of the truth of the representation that the Kugel Composix Hernia Patches were safe for their intended use and were free from design and/or manufacturing defects.

87. Defendants' misrepresentations and omissions were made intentionally to induce Plaintiff to purchase Defendants' Kugel Composix Hernia Patches, in order to reap the high profit margin relating to the Kugel Composix Hernia Patches.

88. Defendant's conduct took unconscionable advantage of its dominant position of knowledge, engaging in constructive fraud in its relationship with Plaintiff. Misled by this veil of fraud, the Plaintiff reasonably relied on Defendant's representations.

**Wherefore**, Plaintiff respectfully requests judgment against Davol and Bard for such amount

as the Court shall determine to be fair and reasonable, and such other relief as may be fair and reasonable under the circumstances and for court costs and litigation expenses.

**COUNT IX**
**Misrepresentation by Omission**

89. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

90. Defendants misrepresented the mechanical soundness and reliability of the Kugel Composix Hernia Patches to the general public through promotional and marketing campaigns. Defendants continued this misrepresentation for an extended period of time, without disclosing material information regarding the defective, hazardous, and harmful complications relating to the Kugel Composix Hernia Patches.

91. Defendants took advantage of the limited ability Plaintiff had to discover Defendants' strategic and intentional concealment of the defects in their Kugel Composix Hernia Patches.

92. Defendants concealed these design and/or manufacturing defects from the public by withholding information pertaining to the inherent design and/or manufacturing defects and high risks of failure relating to the Kugel Composix Hernia Patches, and presenting the devices as sound and reliable.

93. Defendants' intentional misrepresentations and omissions were made willfully, wantonly or recklessly to Plaintiff, the public at large, and Plaintiff's surgeons to induce the purchase of Defendants' Kugel Composix Hernia Patch over other hernia mesh repair systems on the market.

94. Defendants knew or should have known of the high risk the Plaintiff would encounter by unwittingly agreeing to have implanted one of Defendants' defectively designed and/or

manufactured Kugel Composix Hernia Patches.

**Wherefore**, Plaintiff requests a judgment against Davol and Bard for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**PLAINTIFF REQUESTS A TRIAL BY JURY**

**ON ALL COUNTS.**

Plaintiff, Bilye Martinez,
By Plaintiff's Attorneys,

Neville Bedford, Local Counsel

The Heritage Building
321 South Main St. - 5th Floor
Providence RI 02903-7108
tel. 401-709-4328
fax 401-633-6822
<nevillebedford@gmail.com>

Dated: